James SPEET and Ernest
Sims, Plaintiffs,

v.

Bill SCHUETTE, Attorney General for
the State of Michigan, in his official
capacity; City of Grand Rapids; Kev-
in Belk, Chief of Police of the Grand
Rapids Police Department, in his offi-
cial capacity; and Officer Gregory
Bauer, in his individual capacity, De-
fendants.

Case No. 1:11–CV–972.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 24, 2012.

**972**

Miriam J. Aukerman, ACLU of Michigan, Grand Rapids, MI, Daniel Stewart Korobkin, Michael J. Steinberg, ACLU Fund of Michigan, Detroit, MI, for Plaintiffs.

Margaret P. Bloemers, Grand Rapids, MI, Ann Maurine Sherman, Public Employment, Elections and Torts Division, Lansing, MI, for Defendants.

### OPINION AND ORDER

ROBERT J. JONKER, District Judge.

In this case, Plaintiffs James Speet and Ernest Sims challenge a Michigan statute, MICH. COMP. L. § 750.167(1)(h), that makes it a crime to beg in a public place. They assert that the statute, both on its face and as applied to them, violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment of the Constitution. They seek declaratory and injunctive relief. They also seek damages against individual police officers who enforced the statute, and against the City of Grand Rapids.

Before the Court are cross-motions for partial summary judgment on Plaintiffs' claims that MICH. COMP. L. § 750.167(1)(h) is unconstitutional on its face. The parties agree that there is no genuine issue of material fact regarding the facial challenge and that judgment as a matter of law is appropriate. The Court has heard oral argument on the cross-motions, thoroughly reviewed the record, and carefully considered the applicable law. The cross-motions for partial summary judgment are ready for decision.

### Background

Mr. Speet is an adult resident of Grand Rapids, Michigan and has been homeless for approximately two years. (Verified Compl., docket # 1, at ¶ 21.) He receives food stamps, and he gleans cash by collecting and redeeming bottles, cans, and scrap metal. (*Id.* at ¶ 22.) He has no other sources of income. He occasionally seeks assistance from others by holding up a sign asking for work or help. (*Id.* at ¶¶ 22–23.) When seeking work or help, Mr. Speet holds up a sign but does not approach passersby directly. (*Id.* at ¶ 24.) Mr. Speet sees himself as informing people about his situation and his need for help by holding up his sign. (*Id.* at ¶ 25.) Some of his signs have read, for example, "Cold and Hungry, God Bless," and "Need Job, God Bless." (*Id.* at ¶¶ 30, 40.) He has obtained odd jobs, such as mowing lawns, and painting a garage, from individuals seeing his sign. (*Id.* at ¶ 27.) Mr. Speet was arrested and prosecuted in Grand Rapids twice for begging in 2011. (*Id.* at ¶ 29.) On one of those occasions, he was jailed. (*Id.* at ¶ 43.) He has also been

arrested and prosecuted for begging elsewhere in Michigan. (*Id.* at ¶ 44.)

Mr. Sims, an adult resident of Grand Rapids, is an Air Force veteran. (*Id.* at ¶ 52.) He has a disability and receives approximately $260 per month in state disability insurance. (*Id.*) He also receives food stamps. (*Id.*) Mr. Sims attends Grand Rapids Community College, in pursuit of a career in electronics. (*Id.* at ¶ 53.) He occasionally begs for money, typically by asking individuals if they can spare change for a veteran, and moving on if the individual declines. (*Id.* at ¶¶ 54–55.) Mr. Sims was prosecuted for begging several times in Grand Rapids in 2005. (*Id.* at 56.) On July 4, 2011, Mr. Sims was arrested for begging in Grand Rapids after he asked a person on the street whether that person could spare some change. (*Id.* at ¶¶ 59–60.) He ultimately pled guilty to a panhandling charge and was fined $100.

The statute under which Mr. Speet and Mr. Sims were arrested, prosecuted, and punished provides:

> (1) A person is a disorderly person if the person is any of the following:
>
> . . . .
>
> (h) a person found begging in a public place.

MICH. COMP. L. § 750.167(1)(h). A person convicted under section 750.167(1)(h) is "guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $500.00, or both." MICH. COMP. L. § 750.168(1).

The State of Michigan and the City of Grand Rapids (collectively, the "government") assert that Michigan's statutory ban on public begging is constitutional on its face, and they emphasize that the statute serves several desirable purposes. According to the government, the ban helps businesses, because the presence of people begging in or near business establishments may deter others from patronizing those businesses. The government also emphasizes that the ban on begging helps prevent fraud, because beggars may not use the contributions for the purposes donors intend. Indeed, the government observes, some beggars may use such contributions for alcohol and illegal drugs. The government also points out that begging can be intimidating or annoying to others and that the ban helps protect the public from harassment.

Mr. Speet and Mr. Sims contend that the statute is facially unconstitutional under the First Amendment, "because it is a content-based restriction on protected speech in a public forum that is not narrowly tailored to serve a compelling state interest, and because it prohibits a substantial amount of protected speech," and also facially unconstitutional under the Equal Protection Clause of the Fourteenth Amendment, "because it prohibits individuals who wish to beg from engaging in protected First Amendment activity in public places, while allowing other persons to engage in First Amendment Activity in public places." (*Id.* at ¶¶ 123, 129.)

### Legal Analysis

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." Through the Fourteenth Amendment, this prohibition applies to state and local governments as well. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Parks v. City of Columbus,* 395 F.3d 643, 647 (6th Cir.2005). The Fourteenth Amendment also forbids state and local governments from denying to any person within their jurisdictions the equal protection of the laws. "Only a statute that is substantially overbroad may be invalidated on its face." *City of Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (citations omitted).

Whether a statute is substantially overbroad depends primarily upon whether it reaches a substantial amount of protected speech or conduct. *Id.* (citing *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). That it is possible to conceive an impermissible application, without more, does not render a statute facially overbroad. However, statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they have legitimate application." *Id.* Criminal statutes "must be scrutinized with particular care." *Id.* at 459, 107 S.Ct. 2502.

### I. First Amendment

■■ To resolve Plaintiffs' facial challenge to the statute under the First Amendment, the Court must first determine whether begging includes speech or expressive conduct protected under the First Amendment. *Bays v. City of Fairborn,* 668 F.3d 814, 820 (6th Cir.2012). If begging is protected speech or expressive conduct, First Amendment protections are triggered, and the Court must determine whether the government has justified its ban on begging. *Miller v. City of Cincinnati,* 622 F.3d 524, 533 (6th Cir.2010). In making that determination, the Court considers the scope of the restriction, examining particularly whether the restriction is content-specific and to what forums the restriction applies. *Id.* In general, the more a content-based speech restriction applies to traditional public forums, as opposed to more limited venues, the stricter the scrutiny, and the less likely the restriction will pass muster. *Id.*

### A. Begging Includes Protected Speech and Expressive Conduct.

■■ Begging plainly conveys a message: it communicates, whether verbally or non-verbally, a request for financial or material assistance. A beggar's message is analogous to other charitable solicitation: in both situations, the speaker is soliciting financial assistance, the beggar for him or herself, and the charitable fundraiser for a third party. Courts have held repeatedly that charitable solicitations are a form of protected speech. *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 633, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) (citing *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)); *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976); *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). It is well-established that "[c]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Id.* The same rationale logically applies to begging, which involves similar speech interests. As the Second Circuit observes,

> [w]hile ... begging does not always involve the transmission of a particularized social or political message ... it usually involves some communication of that nature. Begging frequently is accompanied by speech indicating the need for food, shelter, clothing, medical care or transportation. Even without particularized speech, however, the presence of ... [a] person holding out his or her hand or a cup to receive a donation itself conveys a message of need for support and assistance. We see little difference between those who solicit for organized charities and those who solicit for themselves in regard to the message conveyed. The former are communicating

the needs of others while the latter are communicating their personal needs. Both solicit the charity of others. The distinction is not a significant one for First Amendment purposes.

*Loper v. New York City Police Department,* 999 F.2d 699, 704 (2d Cir.1993). *See also Smith v. City of Ft. Lauderdale,* 177 F.3d 954, 956 (11th Cir.1999) ("[l]ike other charitable solicitation, begging is speech entitled to First Amendment protection."). For First Amendment purposes, begging and charitable solicitations are both entitled to protection.

 Begging may, of course, take the form of expressive conduct rather than verbal speech. When a beggar wordlessly extends a container for donations, for example, the conduct expresses the message of indigence and request for assistance. The First Amendment protects expressive conduct as well as speech. Though the "government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word ... [i]t may not proscribe particular conduct because it has expressive elements." *Texas v. Johnson,* 491 U.S. 397, 407, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). "The First Amendment generally prevents government from proscribing speech ... or even expressive conduct ... because of disapproval of the ideas expressed." *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) (citations omitted). Regardless of whether begging is characterized as speech, expressive conduct, or a combination of the two, it is entitled to protection under the First Amendment.

The government points out that begging can include conduct elements, such as fraudulent statements; confrontational interaction; trespassing on private property; or other disagreeable behavior that has the potential to interfere with businesses serving the public. This is, of course, true of most speech, including both begging and other charitable solicitation. Here, the Michigan statute sweeps the speech, expression, and conduct elements into a single category of "begging." Because speech and expression are in the mix, the protections of the First Amendment apply.

**B. The Government's Asserted Basis for the Ban of Begging Does not Pass Constitutional Muster.**

**1. A Public Forum Is Involved.**

 The nature of the forum of the speech or expressive conduct at issue affects the degree of protection the speech or expressive conduct receives. *Miller,* 622 F.3d at 533. "In places which by long tradition or governmental fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Such traditional public forums include, for example, "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* (quoting *Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). *See also Parks v. City of Columbus,* 395 F.3d 643, 648 (6th Cir.2005) ("It has been well-established by the United States Supreme Court and upheld by the Circuits that public streets generally constitute traditional public fora.") (citing *Frisby v. Schultz,* 487 U.S. 474, 481, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (noting that "public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum")); *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (stating that "'public places' histori-

cally associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums' "); *United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc.*, 383 F.3d 449, 452 (6th Cir.2004) (restating Supreme Court rule that a street is a public forum); *Chabad of S. Oh. & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 434 (6th Cir.2004) (same); *Dean v. Byerley*, 354 F.3d 540, 550 (6th Cir.2004) (same); *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 746 (6th Cir.2004) (same); *Kincaid v. Gibson*, 236 F.3d 342, 348 (6th Cir.2001) (same). The Michigan statute prohibits "begging in a public place." The parties do not dispute, nor could they, that the statute, which applies to all public places, involves traditional public forums.

### 2. The Statute Is Content–Specific, and Subject to Strict Scrutiny.

The statute restricts protected speech and expressive conduct in traditional public forums. The next question is whether the statute is content-specific or content-neutral. If content-specific, strict scrutiny applies; if content-neutral, the statute is evaluated under a more lenient standard. *Perry*, 460 U.S. at 45, 103 S.Ct. 948. The Court concludes that Michigan's prohibition on begging is a content-specific restriction.

"Government regulations of speech are content-neutral if they are 'justified without reference to the content or viewpoint of the regulated speech.' " *Saieg v. City of Dearborn*, 641 F.3d 727, 735 (6th Cir.2011) (quoting *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, —— U.S. ——, 130 S.Ct. 2971, 2994, 177 L.Ed.2d 838 (2010)). Conversely, "[a]s a general rule, laws that by their terms dis-

tinguish favored speech from disfavored speech on the basis of their ideas or views expressed are content based." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (citations omitted). Under this test, the Michigan statute is content-based, because it distinguishes between types of speech—charitable solicitations vs. other types of advocacy; and further distinguishes charitable solicitations based on the charity involved—the speaker himself or herself vs. a third party that may or may not be related to the speaker. The statute criminalizes only solicitations by a person seeking charity for himself or herself. It permits other non-charitable solicitations, as well as charitable solicitations for third parties even though they too may be associated with fraud, unpleasant personal accosting, or interference with customer traffic and business in the area. As in *City of Houston*, "the enforceable portion of the [statute] deals not with core criminal conduct, but with speech." *City of Houston*, 482 U.S. at 460, 107 S.Ct. 2502 (finding unconstitutionally over-broad a city ordinance making it unlawful to interrupt in any manner, including verbally, a police officer in the execution of his or her duty). The statute simply cannot be characterized as content-neutral.

Michigan's ban on begging is a content-based restriction on protected speech that applies to traditional public forums; therefore, the strictest scrutiny applies. The government must demonstrate that the statute is narrowly tailored to achieve a compelling state interest. *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (holding that a law imposing "an absolute prohibition on a particular type of expression" in a traditional public forum "will be upheld only if narrowly drawn to accomplish a compelling governmental inter-

est."). The government has not met that burden here. The government describes its interest in the statute as linked to the government's "important regulatory interest in safety, regulating the flow of pedestrian and vehicular traffic, protecting businesses and tourism, and protecting against the risk of duress and fraud associated with the solicitation of funds." (docket # 11 at 14.) Even if these concerns amount to compelling state interests, the Court is not persuaded that the total prohibition on begging in public places is narrowly tailored to achieve these ends. Less restrictive means of furthering these interests exist. Nothing prohibits the government from regulating directly the conduct the government identifies as problematic. The government can and does prohibit fraud, assault, and trespass. But what the government cannot do without violating the First Amendment is categorically prohibit the speech and expressive elements that may sometimes be associated with the harmful conduct; it must protect the speech and expression, and focus narrowly and directly on the conduct it seeks to prohibit. That the statute does not restrict charitable solicitation, which involves the same kinds of risks the government associates with begging, further calls into question the necessity of the total prohibition on begging. Content-neutral regulations could accomplish the goals the government describes.

The factual situation in *Loper* closely resembles the factual backdrop of this case, and the *Loper* court's analysis is precisely on point. *Loper* focused on the constitutionality of a New York Penal Law similar to the statute at issue in the case before this Court. The New York statute defined a person as guilty of loitering when that person "[l]oiters, remains or wanders about in a public place for the purpose of begging...." *Loper*, 999 F.2d at 701. The *Loper* court found that beg-

ging amounted to protected speech and that the statute addressed begging in a traditional public forum. *Id.* at 705. Applying strict scrutiny, the court could not find that any "compelling state interest is served by excluding those who beg in a peaceful manner from communicating with their fellow citizens." *Id.* The court pointed out that even if a compelling interest did exist, "a statute that totally prohibits begging in all public places cannot be considered 'narrowly tailored' to achieve that end." *Id.* The *Loper* court concluded that the statute "sweeps within its overbroad purview the expressive conduct and speech that the government should have no interest in stifling" and could not stand. *Id.* The same is true of Michigan's blanket ban on public begging.

**3. The Statute Would not Pass Constitutional Muster Under Other Less Stringent Standards of Review, in Any Event.**

The government contends that the intermediate scrutiny framework established in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) governs this case. In *O'Brien*, the Court determined that the conviction of a draft protester who burned his draft card, under a generally applicable prohibition on destroying draft cards, did not violate the First Amendment. In reaching its conclusion, the *O'Brien* Court applied what the court "[has] since called 'intermediate scrutiny,' under which a 'content-neutral regulation will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests.'" *Holder v. Humanitarian Law Project*, —— U.S. ——, 130 S.Ct. 2705, 2724, 177 L.Ed.2d 355 (2010) (quoting *Turner Broadcasting System, Inc. v. FCC*, 520

U.S. 180, 189, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997)). *O'Brien* involved "a regulation of general conduct (a prohibition on the destruction of Selective Service draft cards) that incidentally burdened 'symbolic speech' or 'expressive conduct.'" *Richland Bookmart, Inc. v. Knox County,* 555 F.3d 512, 522 (6th Cir.2009). This is not an *O'Brien* case. Michigan's statute is content-specific, not content-neutral. That alone takes it outside the *O'Brien* framework. Even applying the *O'Brien* standard, however, the statute would still fail to pass constitutional muster. The statute does not "incidentally burden" speech or expressive conduct; rather, it prohibits an entire category of speech and expressive conduct. It burdens substantially more speech than necessary to achieve the interests the government describes. The statute does not survive the *O'Brien* test.

 Alternatively, the government posits that the anti-begging statute is a reasonable time, place, and manner restriction. The standard applicable to time, place, or manner restrictions closely resembles *O'Brien* intermediate scrutiny. *Ward v. Rock Against Racism,* 491 U.S. 781, 797–98, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Indeed, the two standards have been treated "as sufficiently similar to be applied interchangeably." *Richland Bookmart,* 555 F.3d at 521. "To qualify as a reasonable time-place-and-manner regulation of speech, [a] law must (1) be content-neutral, (2) serve a significant government interest, (3) be narrowly tailored to serve that interest, and (4) leave open ample alternative channels of communication." *Jobe v. City of Catlettsburg,* 409 F.3d 261, 267 (6th Cir.2005) (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 808, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Prime Media, Inc. v. City of Brentwood,* 398 F.3d 814, 818 (6th Cir.2005); *United*

*Food & Commercial Workers Local 1099 v. City of Sidney,* 364 F.3d 738, 751–52 (6th Cir.2004)). In this case, the statute fails to satisfy the requirements of a valid time, place, or manner restriction. The statute applies at all times, in all public places, to all manners of begging. The statute is content-specific, not content-neutral. The statute leaves open minimal, if any, alternative channels of communication. The statute fares no better under a time, place, or manner framework than under the *O'Brien* test.

## II. Equal Protection

 "The Equal Protection Clause 'protects against invidious discrimination among similarly situated individuals or implicating fundamental rights.'" *Miller v. City of Cincinnati,* 622 F.3d 524, 538 (6th Cir.2010) (quoting *Scarbrough v. Morgan Cnty. Bd. of Ed.,* 470 F.3d 250, 260 (6th Cir.2006)). "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough,* 470 F.3d at 260. "Strict scrutiny is appropriate only if a classification 'infringes on a class of people's fundamental rights [or] targets a member of a suspect class.'" *Miller,* 622 F.3d at 538 (quoting *Scarbrough,* 470 F.3d at 260). "When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized." *Carey v. Brown,* 447 U.S. 455, 461–62, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980). "[U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable,

but deny use to those wishing to express less favored or more controversial views." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ The Michigan statute restricts some individuals from exercising a fundamental right, freedom of expression, while permitting other individuals with more acceptable messages to exercise that very right. The First Amendment "forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Taxpayers for Vincent*, 466 U.S. at 804, 104 S.Ct. 2118 (citing *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 65, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 533–36, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980); *Carey v. Brown*, 447 U.S. 455, 462–63, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 63–65, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (plurality opinion); *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95–96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). Yet that is precisely what the Michigan anti-begging statute does, without any clear linkage between the statute and the interests the statute purports to serve. The statute runs afoul of the Equal Protection Clause, because the regulated activity is speech, thus implicating First Amendment issues.

■ It is important to recognize that the Equal Protection analysis largely duplicates the First Amendment analysis in this case. The government has broad discretion to regulate conduct by drawing lines. It is only when the line-drawing impinges directly on fundamental rights, such as speech, or uses suspect classifications, such as race, that strict scrutiny applies. Moreover, it is only when the line-drawing directly impinges on free speech that the unique doctrine of overbreadth comes into play. Strict scrutiny and overbreadth are special limits to the otherwise broad discretion government has to regulate activity on any reasonable basis. Here, because the statute at issue is a complete ban in all public places of a content-specific message, the First Amendment and Fourteenth Amendment analyses converge.

*III. Constitutional Claims: Conclusion.*

For these reasons, the Court concludes that Mich. Comp. L. § 750.167(1)(h), on its face, violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The Court's conclusion comports with the decisions of every Circuit to consider similar restrictions. *See, e.g., Loper v. N.Y. City Police Dep't*, 999 F.2d 699 (2d Cir.1993); *Gresham v. Peterson*, 225 F.3d 899 (7th Cir.2000) (rejecting constitutional challenge to ordinance that prohibited "aggressive panhandling" but allowed peaceful panhandling at certain times and in certain locations, distinguishing the ordinance as "a far cry from the total citywide ban on panhandling overturned by the Court in *Loper*."); *Comite de Jornaleros de Redondo Beach*, 657 F.3d 936 (9th Cir.2011) (en banc) (striking down an ordinance that prohibited "solicit[ing], or attempt[ing] to solicit, employment, business or contributions from an occupant of any motor vehicle"); *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir.2006) (ordinance prohibiting begging and soliciting in downtown area held invalid because "[i]t is beyond dispute that solicitation is a form of expression entitled to the same constitutional protections as traditional speech"); *Smith v. City of Fort Lauderdale*, 177 F.3d 954 (11th Cir.1999) (observing that "[l]ike other charitable solicitation, begging is speech

entitled to First Amendment protection" and upholding a ban on solicitation on a particular beach as a valid time, place or manner restriction when begging was still allowed "in streets, on sidewalks, and in many other public fora throughout the city.").

Indeed, virtually every court considering the constitutionality of blanket restrictions on begging has reached the same conclusion as this Court.[1] *See, e.g., Blair v. Shanahan,* 775 F.Supp. 1315 (N.D.Cal. 1991) (holding that California's anti-begging statute violated both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment), *vacated as moot,* 919 F.Supp. 1361 (N.D.Cal. 1996); *Ledford v. State,* 652 So.2d 1254 (Fla.Dist.Ct.App.1995) (holding ban on begging an unconstitutional interference with free speech); *Benefit v. City of Cambridge,* 424 Mass. 918, 679 N.E.2d 184 (1997) (holding Massachusetts anti-begging statute a violation of the First Amendment); *C.C.B. v. State of Florida,* 458 So.2d 47, 50 (Fla.App.Ct.1984) ("a total prohibition of begging or soliciting alms for oneself is an unconstitutional abridgement to the right to free speech"); *Thompson v. City of Chicago,* 2002 WL 31115578 (N.D.Ill. Sept. 24, 2002) (unreported) (permitting class action against city for making arrests under city anti-begging ordinance to proceed, in light of the holdings of numerous courts that such restrictions were unconstitutional).

**ACCORDINGLY,** Plaintiffs' Motion for Partial Summary Judgment on the First and Third Counts of their Complaint (docket #5) is **GRANTED.** Because other claims remain in the case, final relief would ordinarily not enter at this time based on the Court's resolution of a portion of the case. The Court would instead weigh the Plaintiffs' alternative request for entry of at least a preliminary injunction on the resolved claims pending adjudication of all remaining claims in the case. Of course, it is possible this would be an appropriate case for entry of final relief under Rule 54(b) on the First and Third Counts of the Complaint. It may even be that all parties would prefer that, and would choose to defer litigation of the remaining issues in the case pending appellate review of the legal issues addressed in this decision. The Court invites the parties' positions on (1) the nature and scope of relief that ought to be entered at this time; and (2) the desired timing for litigation of the remaining claims in the case. If the parties agree on these issues, they may file a proposed stipulation and order embodying the agreement. If the parties differ, each must file a brief describing and defending their respective positions. In either case, the submissions are due not later than Monday, September 10, 2012.

---

1. The government cites just two intermediate California state cases reaching a different result: *Ulmer v. Municipal Court,* 55 Cal.App.3d 263, 127 Cal.Rptr. 445 (Cal.Dist.Ct.App.1976), and *People v. Zimmerman,* 15 Cal.App.4th Supp. 7, 19 Cal.Rptr.2d 486 (Cal.App.1993).