*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES SPEET and ERNEST SIMS,
          *Plaintiffs-Appellees,*

                    *v.*                                    No. 12-2213

BILL SCHUETTE,

          *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cv-00972—Robert J. Jonker, District Judge.

Argued: June 13, 2013

Decided and Filed:  August 14, 2013

Before:  MARTIN and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

_____

## COUNSEL

**ARGUED:**   Ann M. Sherman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant.  Miriam J. Aukerman, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Ann M. Sherman, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant.  Miriam J. Aukerman, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Grand Rapids, Michigan, Michael J. Steinberg, Daniel S. Korobkin, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, for Appellees.

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

BOYCE F. MARTIN, JR., Circuit Judge.  This appeal involves a facial challenge to the constitutionality, under the First and Fourteenth Amendments to the United States Constitution, of a Michigan statute that criminalizes begging.  This appeal poses two issues.  The first issue is whether begging is a form of solicitation that the First Amendment protects.  We hold that it is.  The second issue is whether, as the district court concluded, the statute violates—on its face—the First Amendment.  We agree with the district court that it does.  Michigan's anti-begging statute cannot withstand facial attack because it prohibits a substantial amount of solicitation, an activity that the First Amendment protects, but allows other solicitation based on content.  Therefore, we **AFFIRM** the district court's judgment.

The Michigan anti-begging statute at issue in this case has existed since at least 1929.  Mich. Comp. Laws § 900 (1929).  The statute provides that "[a] person is a disorderly person if the person is any of the following: . . . (h) A person found begging in a public place."  Mich. Comp. Laws Ann. § 750.167(1)(h) (West 2013).  The statute criminalizes begging.  A person convicted under section 750.167(1)(h) is "guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $500.00, or both."  Mich. Comp. Laws Ann. § 750.168(1) (West 2013).  According to the record, the police department in Grand Rapids, Michigan recorded four-hundred and nine reports of incidents of police enforcing this anti-begging ordinance from 2008–2011.

Among those whom the Grand Rapids police arrested under the anti-begging ordinance are the plaintiffs: James Speet and Ernest Sims, two homeless adult residents of Grand Rapids, Michigan.  In January 2011, Speet was arrested for begging in Grand Rapids.  He was holding a sign saying: "Cold and Hungry, God Bless."  The police gave Speet an appearance ticket, and he pleaded guilty to the charge.  Unable to pay the $198 fine, Speet spent four days in jail.  Then, in June 2011, Speet was holding a sign that

said, "Need Job, God Bless," while standing between a sidewalk and a street in Grand Rapids. The Grand Rapids police again arrested him for begging. After Speet secured pro bono counsel, the prosecution dismissed the begging charge.

On July 4, 2011, Sims needed money for bus fare, and asked a person on the street: "Can you spare a little change?" A Grand Rapids police officer witnessed Sims asking for change and immediately arrested him. After Sims, a veteran, requested that he not be taken to jail because it was the Fourth of July, the officer agreed to give him an appearance ticket. Later, Sims appeared without counsel in court on the begging charge. He pleaded guilty and was sentenced to pay a fine of $100. Speet and Sims are not the only people that have been fined or jailed under Michigan's anti-begging statute. The Grand Rapids Police Department, during 2008–2011, initiated three-hundred and ninety-nine cases by arresting or citing people for begging.

Speet and Sims sued Michigan Attorney General Bill Schuette, the City of Grand Rapids, and several of its police officers for declaratory and injunctive relief, alleging that Michigan's anti-begging statute violated—both facially and as applied—the First Amendment and the Fourteenth Amendment's Equal Protection Clause.

The complaint's first count asserted that Michigan's anti-begging law was "facially invalid under the First Amendment[;]" likewise, the complaint's third count asserted that Michigan's anti-begging law was "facially invalid under the Equal Protection Clause." The complaint's second and fourth counts asserted that the statute violated the First and Fourteenth Amendments "as applied" to Speet and Sims.

Instead of moving for summary judgment on the as-applied claims, Speet and Sims moved for summary judgment on the facial claims. *Speet v. Schuette*, 889 F. Supp. 2d 969, 972 (W.D. Mich. 2012). Michigan also moved for summary judgment on these claims. *Id*. In a published opinion and order, the district court granted Speet's and Sims' motion for partial summary judgment. *Id.* at 980. Michigan Attorney General Bill Schuette filed a timely appeal.

We review de novo a district court's decision to grant summary judgment. *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citing *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 595 (6th Cir. 2009)). A district court properly grants summary judgment when "'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 761 (6th Cir. 2010)). Here, the "parties agree[d] that there [was] no genuine issue of material fact regarding the facial challenge and that judgment as a matter of law [was] appropriate." *Speet*, 889 F. Supp. 2d at 972.

A facial challenge to a law's constitutionality is an effort "to invalidate the law in each of its applications, to take the law off the books completely." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir 2009) (en banc); *see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, n.5 (1982) ("a 'facial' challenge . . . means a claim that the law is 'invalid *in toto*—and therefore incapable of any valid application.'" (quoting *Steffel v. Thompson*, 415 U.S. 452, 474 (1974))). In contrast to an as-applied challenge, which argues that a law is unconstitutional as enforced against the plaintiffs before the court, a facial challenge "is not an attempt to invalidate the law in a discrete setting but an effort 'to leave nothing standing[.]'" *Connection Distributing Co.*, 557 F.3d at 335 (en banc) (quoting *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc)). Sustaining a facial attack to the constitutionality of a state law, as the district court did, is momentous and consequential. It is an "exceptional remedy." *Carey v. Wolnitzek*, 614 F.3d 189, 201 (6th Cir. 2010).

Generally, to "succeed in a typical facial attack," a plaintiff must establish "'that no set of circumstances exists under which [the statute] would be valid.'" *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Or, a plaintiff would have to establish that "the statute lacks any 'plainly legitimate sweep[.]'" *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7

(1997) (Stevens, J., concurring)).    Here, Attorney General Schuette argues that, to succeed in their facial attack, Speet and Sims must demonstrate that there is no conceivable manner in which the anti-begging statute can be enforced consistent with the First Amendment.    While this is the general rule, an exception exists for facial challenges based on the First Amendment.

Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the "facial challenge" is an "overbreadth challenge." *Connection Distrib. Co.*, 557 F.3d at 335; *see also City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987) ("Only a statute that is substantially overbroad may be invalidated on its face." (citing *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973))).   Instead of having to prove that *no* circumstances exist in which the enforcement of the statute would be constitutional, the plaintiff bears a lesser burden: "to demonstrate that a 'substantial number of instances exist in which the law cannot be applied constitutionally.'"   *Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (quoting *Richland Bookmart, Inc. v. Knox Cnty.*, 555 F.3d 512, 532 (6th Cir. 2009)).   Thus, "[t]he First Amendment doctrine of overbreadth is an exception to [the] normal rule regarding the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003) (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)).

And in a facial challenge, a plaintiff must show substantial overbreadth: that the statute prohibits "'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]'" *Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010) (quoting *Connection Distrib. Co.*, 557 F.3d at 336).   We have acknowledged that "[T]he concept of 'substantial overbreadth'" has "some elusive qualities[.]" *Connection Distrib. Co.*, 557 F.3d at 340; *see also Taxpayers for Vincent*, 466 U.S. at 800 ("[t]he concept of 'substantial overbreadth' is not readily reduced to an exact definition.").   But the doctrine of substantial overbreadth "involves an inquiry into the 'absolute' nature of a law's suppression of speech." *Connection Distrib. Co.*, 557 F.3d at 340.   A facial challenge based on substantial overbreadth "describe[s] a

challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest." *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 966 n.13 (1984) (citing *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637–639 (1980) (rest of citation omitted)). As the Supreme Court has explained, the point of an overbreadth challenge "is that there is no reason to limit challenges to case-by-case 'as applied' challenges when the statute on its face and therefore in all its applications falls short of constitutional demands." *Joseph H. Munson Co., Inc.*, 467 U.S. at 966 n.13. If we determine that a statute is substantially overbroad, we have necessarily determined that there is "'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" *N. Y. State Club Ass'n v. City of N. Y.*, 487 U.S. 1, 11 (1988) (quoting *Taxpayers for Vincent*, 466 U.S. at 801). To succeed in an overbreadth challenge, therefore, a plaintiff must "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally." *N. Y. State Club*, 487 U.S. at 14.

So the first step in reviewing a facial challenge to a law's overbreadth requires us "'to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.'" *City of Houston*, 482 U.S. at 458–59 (quoting *Vill. of Hoffman Estates*, 455 U.S. at 494; *Kolender v. Lawson*, 461 U.S. 352, 359 n.8 (1983)). If the law does not reach a substantial amount of constitutionally protected conduct, "then the overbreadth challenge must fail." *Vill. of Hoffman Estates*, 455 U.S. at 494. In other words, the "first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. We must scrutinize "[c]riminal statutes . . . with particular care[.]" *City of Houston*, 482 U.S. at 459 (citing *Winters v. New York*, 333 U.S. 507, 515 (1948). Here, then, we must first determine whether the Michigan statute reaches a substantial amount of constitutionally protected conduct or speech. And, because it is a criminal statute, we must scrutinize the statute with particular care.

On appeal, Attorney General Schuette argues that the anti-begging statute does not reach any conduct or speech that the First Amendment protects. But begging, by its very definition, encapsulates the solicitation for alms. Although neither the anti-begging section of the statute, nor another section of the statute, defines "begging," according to Michigan law, "[w]hen a statute fails to define a term, we will construe it 'according to its common and approved usage . . . .'" Jennings v. Southwood, 521 N.W.2d 230, 237 (Mich. 1994) (quoting *State ex rel. Wayne Cnty. Prosecutor v. Levenburg*, 280 N.W.2d 810, 812 (1979), *abrogated on other grounds by Michigan ex rel County Prosecutor v. Bennis*, 527 N.W.2d 483 (Mich. 1994)). Michigan law further provides that "resort[ing] to the standard dictionary definition is an appropriate means of determining [a term's] common and approved usage." *Shinkle v. Shinkle*, 663 N.W.2d 481, 485 (Mich. Ct. App. 2003) (citing *Horace v.Pontiac*, 575 N.W.2d 762, 767 (1998)). Here, Attorney General Schuette resorted to a dictionary definition of begging in his opening brief, defining begging as "soliciting alms." The New American Heritage Dictionary 119 (5th ed. 1976). We see no reason not to use, for the purposes of this appeal, this commonsense definition of begging as "soliciting alms."

While the United States Supreme Court has not, as Michigan correctly points out in its briefs, directly decided the question of whether the First Amendment protects soliciting alms when done by an individual, the Court has held—repeatedly—that the First Amendment protects charitable solicitation performed by organizations.

In *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 622 (1980), the Court addressed the validity, under the First and Fourteenth Amendments, of a municipal ordinance that prohibited charitable organizations from soliciting contributions unless they used at least seventy-five percent of their receipts for what the ordinance defined as charitable purposes. The plaintiffs challenged "the facial validity of the village ordinance on First Amendment grounds," *id.* at 627, and the Court affirmed the Seventh Circuit's upholding of the district court's "judgment of facial invalidity" of the ordinance. *Id.* at 634.

After summarizing its relevant cases, the Court held that its "[p]rior authorities, therefore, clearly establish that charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment." *Id.* at 632.

The Court has repeatedly reaffirmed *Schaumburg*'s holding that the First Amendment protects charitable solicitation. In 1984, the Court observed that *Schaumburg* had determined that "charitable solicitations are so intertwined with speech that they are entitled to the protection of the First Amendment." *Joseph H. Munson Co.*, 467 U.S. at 959. Then, in 1988, the Court reiterated that *Schaumburg* and *Munson*, "teach that the solicitation of charitable contributions is protected speech[.]" *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988). In 1990, in *United States v. Kokinda*, 497 U.S. 720 (1990) (plurality opinion), while the Court held constitutional, as applied, a United States Postal Service regulation prohibiting the solicitation of alms and contributions on postal premises, the Court also stated that "[s]olicitation is a recognized form of speech protected by the First Amendment." *Kokinda*, 497 U.S. at 725 (citing *Schaumburg*, 444 U.S. at 629; *Riley*, 487 U.S. at 788–789). Thus, the First Amendment protects charitable solicitation performed by organizations. But does the First Amendment protect the solicitation of alms when performed by an individual not affiliated with a group? We hold that it does.

We find persuasive the Seventh Circuit's reasoning in *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000), in which a plaintiff mounted an as-applied challenge, on First Amendment grounds, to an Indianapolis ordinance that prohibited soliciting in public places. The Seventh Circuit acknowledged that "the Supreme Court has not resolved directly the constitutional limitations on [panhandling laws] as they apply to individual beggars," but noted that the Court "has provided clear direction on how they apply to organized charities, not-for-profits, and political groups." *Gresham*, 225 F.3d at 903 (citing *Riley*, 487 U.S. at 789; *Joseph H. Munson Co.*, 467 U.S. at 959–60; *Schaumburg*, 444 U.S. at 632).

We agree with the Seventh Circuit's reasoning that "*Shaumburg* provides the appropriate standard to analyze" whether the First Amendment protects begging. *Gresham*, 225 F.3d at 904–05.  *Gresham* analogized panhandlers to the charity in *Shaumburg*, saying that "[l]ike the organized charities, [the panhandlers'] messages cannot always be easily separated from their need for money." *Id.* at 904.  The *Gresham* panel concluded by saying that "[w]hile some communities might wish for all solicitors, beggars and advocates of various causes be vanished from the streets, the First Amendment guarantees their right to be there, deliver their pitch and ask for support." *Id.* (citing *Schaumburg*, 444 U.S. at 632).  We further agree with *Gresham*'s observation that "[i]ndeed, the Court's analysis in *Schaumburg* suggests little reason to distinguish between beggars and charities in terms of the First Amendment protection for their speech." *Id.*

Our sister circuits—the Second, Eleventh, and Fourth Circuits—in cases decided before and after *Gresham*, have similarly held that begging is a type of solicitation protected by the First Amendment.  We find these cases to be persuasive authority, as well, for our holding that begging is a form of solicitation that the First Amendment protects.

The Second Circuit, in *Loper v. New York City Police Department*, 999 F.2d 699, 706 (2d Cir. 1993), affirmed the district court's judgment that had declared unconstitutional, on First Amendment grounds, a state statute which stated that "[a] person is guilty of loitering when he: 1. [l]oiters, remains or wanders about in a public place for the purpose of begging . . . ." N.Y. Penal Law § 240.35(1) (McKinney 1989). *Loper*, like *Gresham*, relied on *Schaumburg*'s holding that "'charitable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of view and ideas, and the advocacy of causes—that are within the protection of the First Amendment.'" *Loper*, 999 F.2d at 704 (quoting *Schaumburg*, 444 U.S. at 632).  *Loper* explained that "[i]nherent in all the charitable solicitation cases revolving around the First Amendment is the concept that '[c]anvassers in such contexts are necessarily more

than solicitors for money.'" *Id.* (quoting *Schaumburg*, 444 U.S. at 632)).  The *Loper* panel explained that "[b]egging frequently is accompanied by speech indicating the need for food, shelter, clothing, medical care or transportation." *Loper*, 999 F.2d at 704.  It concluded that[,] "in regard to the message conveyed," it saw "little difference between those who solicit for organized charities and those who solicit for themselves[,]" because those who solicit for organized charities "are communicating the needs of others[,]" while those who solicit for themselves "are communicating their personal needs." *Id.* According to the *Loper* panel, "[b]oth solicit the charity of others.  The distinction is not a significant one for First Amendment purposes." *Id.*  (citation omitted).

The Eleventh Circuit, in *Smith v. City of Fort Lauderdale, Fla.*, 177 F.3d 954, 955 (11th Cir. 1999), held that a city's regulation proscribing begging on a certain five-mile strip of beach and two attendant sidewalks was narrowly tailored to serve the city's legitimate interests.  But the court began its analysis by stating that "[l]ike other charitable solicitation, begging is speech entitled to First Amendment protection." *Id.* at 956 (footnote omitted) (citing, *Loper* 999 F.2d 699 at 704; *Schaumburg*, 444 U.S. at 632).

This year, the Fourth Circuit, in *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 551 (4th Cir. 2013), addressed the question of whether a municipal ordinance, that prohibited people from soliciting immediate donations in two streets near a downtown shopping area, unconstitutionally restricted the free speech of individuals who regularly begged there.  The court noted, "[a]s a preliminary matter," that "the speech and expressive conduct that comprise begging merit First Amendment protection." *Id.* at 553.  The court observed that the United States Supreme Court has "held that the solicitation of 'charitable contributions' is protected speech." *Id.*  (quoting *Riley*, 487 U.S. at 789).  The court also observed that several other United States Courts of Appeals had "extended that holding to begging, which is simply solicitation on behalf of the speaker." *Id.*  (citing *Smith* 177 F.3d at 956; *Loper*, 999 F.2d at 704).  The court concluded by stating "[w]e agree that begging is communicative activity within the protection of the First Amendment." *Id.*

Michigan relies on several authorities to argue that the First Amendment does not protect begging, or soliciting alms—but we find not one of these authorities persuasive. First, Michigan cites Part II of Justice Kennedy's concurrence in *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 703 (1992) (plurality opinion). In Part II of his concurrence, Justice Kennedy stated that he was "in full agreement with the statement of the Court that solicitation is a form of protected speech." *Lee*, 505 U.S. at 704 (citing *Riley*, 487 U.S. at 788–89; *Schaumburg*, 444 U.S. at 629) (rest of citation omitted)). But Justice Kennedy argued that an airport regulation that prohibited solicitation for the immediate payment of funds did not violate the First Amendment because the regulation "reache[d] only personal solicitations for immediate payment of money." *Lee*, 505 U.S. at 704. Justice Kennedy hypothesized that, had the regulation "prohibited all speech that requested the contribution of funds," then he "would [have] conclude[d] that it was a direct, content-based restriction of speech in clear violation of the First Amendment." *Id.* But, Justice Kennedy wrote, the "regulation d[id] not prohibit all solicitation[;]" rather, "it prohibit[ed] the 'solicitation and receipt of funds.'" *Id.* Justice Kennedy characterized the restriction as "directed only at the physical exchange of money, which is an element of conduct interwoven with otherwise expressive solicitation." *Id.* at 705.

We decline to follow the reasoning in Part II of Justice Kennedy's concurrence in *Lee* for three reasons. First, to the extent that Part II of Justice Kennedy's concurrence argues that the "physical exchange of money" may be isolated from the act of solicitation, it runs contrary to *Schaumburg*'s holding that solicitation of charitable donations is "characteristically intertwined with informative and perhaps persuasive speech[.]" *Schaumburg*, 444 U.S. at 632. *Schaumburg* does not suggest that the physical exchange of money may be isolated; it is "intertwined" with speech that the First Amendment protects. Second, Part II of Justice Kennedy's concurrence is not *Lee*'s holding. And third, Justice Kennedy wrote Part II without another Justice joining him.

Michigan also cites the Second Circuit's decision in *Young v. New York City Transit Authority*, 903 F.2d 146 (2d Cir. 1990), as authority for the proposition that the First Amendment does not protect begging. *Young* initially framed the issue as "whether the prohibition of begging and panhandling in the New York City subway system violate[d] the First Amendment of the United States Constitution." *Young*, 903 F.2d at 147 (footnote omitted). The regulation provided that "'no person, unless duly authorized . . . shall upon any facility or conveyance . . . solicit alms, subscription or contribution for any purpose.'" *Id.* at 148 (quoting N.Y. Comp. Codes R. & Regs. tit. 21, § 1050.6(b) (1989)). The Second Circuit opined that "[c]ommon sense" dictates that "begging is much more 'conduct' than it is 'speech.'" *Id*. at 153. Therefore, the court reframed the issue as "whether begging constitutes the kind of 'expressive conduct' protected to some extent by the First Amendment." *Id.*

*Young* read *Schaumburg*'s holding to be limited to appeals by organized charities; only these solicitations involve a variety of speech interests including communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes. *Id.* at 155. *Young* asserted that "neither *Schaumburg* nor its progeny stand for the proposition that begging and panhandling are protected speech under the First Amendment." *Id.* Rather, the court said, *Schaumburg*, *Munson* and *Riley* "hold that there is a sufficient nexus between solicitation by organized charities and a 'variety of speech interests' to invoke protection under the First Amendment." *Id.* *Young* displayed the panel's distaste for begging, writing that "[w]hile organized charities serve community interests by enhancing communication and disseminating ideas, the conduct of begging and panhandling in the subway amounts to nothing less than a menace to the common good." *Young*, 903 F.2d at 156 (citing *Taxpayers for Vincent*, 466 U.S. at 805).

We decline to follow the *Young* majority's reasoning. We find more persuasive *Young*'s dissent, which held that there is no "legally justifiable distinction" between "begging for one's self and solicitation by organized charities." *Young*, 903 F.2d at 164 (Meskill, J., dissenting). The dissent read *Schaumburg*—as we do— as holding that

"charitable solicitation is protected because it 'is characteristically intertwined with . . . speech seeking support for particular causes or for particular views on economic, political, or social issues.'" *Id.* at 165 (quoting *Schaumburg*, 444 U.S. at 632). We agree with the dissent's statement that *Schaumburg* "held that First Amendment protection attaches to all charitable solicitation, whether or not any speech incident to the solicitation actually takes place, because a sufficient nexus exists between a charity's expression of ideas and its fundraising." *Id.* We further agree with the dissent's conclusion that "if First Amendment protection extends to charitable solicitation unaccompanied by speech, as it apparently does, it must extend to begging as well." *Id.* And we agree that "begging is indistinguishable from charitable solicitation for First Amendment purposes. To hold otherwise would mean that an individual's plight is worthy of less protection in the eyes of the law than the interests addressed by an organized group." *Id.* at 167.

Moreover, *Loper* overruled *Young*'s holding that begging is not conduct that communicates. *Loper* stated that "[w]hile we indicated in *Young* that begging does not always involve the transmission of a particularized social or political message, *see Young*, 903 F.2d at 153, it seems certain that it usually involves some communication of that nature." *Loper*, 999 F.2d at 704.

Based on the foregoing discussion, we hold that begging, or the soliciting of alms, is a form of solicitation that the First Amendment protects.

We now consider whether Michigan's anti-begging statute is substantially overbroad. We will not apply the "'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 n.6 (citing *N. Y. State Club*, 487 U.S. at 14). The plaintiff bears "'the burden of demonstrating . . . substantial overbreadth.'" *Connection Distrib. Co.*, 557 F.3d at 336 (quoting *Hicks*, 539 U.S. 113, 122 (2003)). A plaintiff "'must demonstrate from the text of the statute and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally.'" *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012)

(quoting *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010)). A plaintiff may not "leverag[e] a few alleged unconstitutional applications of the statute into a ruling invalidating the law in all of its applications." *Connection Distrib. Co.*, 557 F.3d at 340. Sometimes plaintiffs have difficulty bearing this burden. For example, in one case we said that the record was "'utterly barren about whether some, many, indeed any, [other people] [were] affected by . . . application of the statute.'" *Glenn*, 690 F.3d at 422 (quoting *Connection Distrib. Co.*, 557 F.3d at 338–39). We do not have that problem here.

The record shows that the statute reaches a substantial amount of begging, which we have held that the First Amendment protects because it is a form of solicitation. Instead of a few instances of alleged unconstitutional applications, we have hundreds. The Grand Rapids Police Department produced four hundred nine incident reports related to its enforcement of the anti-begging statute. Thirty-eight percent of the people that the police stopped were holding signs requesting help, containing messages like "Homeless and Hungry: Need Work," "Homeless Please Help God Bless," "Lost My Job Need Help," and "Homeless and Hungry Vet." The other sixty-two percent of the stops (two hundred fifty-five instances) involved people verbally soliciting charity. In forty-three percent of the cases, the police immediately arrested the people who were begging. In two hundred eleven cases, people convicted of begging were sentenced directly to jail time. The record in this case bolsters our "judicial prediction" that "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612.

Thus, sustaining the facial challenge in this case is appropriate because the risk exists that, if left on the books, the statute would chill a substantial amount of activity protected by the First Amendment. We must provide "this expansive remedy" because "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech"—especially where, as here, "the overbroad statute imposes criminal sanctions." *Hicks*, 539 U.S. at 119 (citing *Schaumburg*, 444 U.S. at 634; *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380 (1977); *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

The reason for this is that "free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power." *N. Y. State Club*, 487 U.S. at 11 (citing *Thornhill v. Alabama*, 310 U.S. 88, 97–98 (1940)). We are concerned that "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas.*" Hicks*, 539 U.S. at 119 (citation omitted). Thus "[o]verbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech." *Id.* As long as "the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one." *Dombrowski v. Pfister*, 380 U.S. 479, 494 (1965).

But "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick*, 413 U.S. at 613 (citing *Dombrowski*, 380 U.S. at 491; *Cox v. New Hampshire*, 312 U.S. 569 (1941); *United States v. Thirty-Seven Photographs*, 402 U.S. 363 (1971); *Breard v. Alexandria*, 341 U.S. 622 (1951)). Therefore, we must consider any limiting construction of the statute that Michigan can present. *Vill. of Hoffman Estates*, 455 U.S. at 495 n.5 ("[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.") (citing *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)). We need not consider a limiting construction, however, if the statute "is not 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (quoting *Harmon v. Forssenius*, 380 U.S. 528, 535 (1965)).

Here, we cannot read the statute to limit its constitutional effect. The statute simply bans an entire category of activity that the First Amendment protects.

We acknowledge that the statute serves "a sufficiently strong, subordinating interest that [Michigan] is entitled to protect." *Schaumburg*, 444 U.S. at 636. Here,

Attorney General Schuette argues that Michigan's interest is in preventing fraud.  He argues that not all those who beg are homeless and destitute, nor do all those who beg use the funds they receive from begging to meet basic needs.  Instead, those who beg often spend that money on alcohol.  The record contains an affidavit of an executive director of an agency that works with the homeless as saying that "the great majority of people panhandling for money are using the money for alcohol and drugs."  Furthermore, panhandlers who display signs saying that they are homeless often are not.  Rather, they use the signs "to elicit sympathy and money, often to feed a drug or alcohol problem."  Even the United States Department of Justice has recognized "[t]his potential for fraud" and has put out a publication on panhandling which states that "some panhandlers pretend to be disabled and/or war veterans," and that the panhanders' "primary purpose is to immediately buy alcohol or drugs."  Attorney General Schuette also argues that the ordinance prevents duress.

We agree with Attorney General Schuette that the prevention of fraud and duress are substantial state interests.  In *Schaumburg*, the Village argued that its ordinance was intimately related to the substantial governmental interests in protecting the public from fraud, crime, and undue annoyance.  *Schaumburg*, 444 U.S. at 636.  The Court noted that, like here, "[p]revention of fraud [was] the Village's principal justification" for the ordinance.  *Id*.  The Court declared that, while these interests were substantial, they were "only peripherally promoted" by the ordinance and "could be sufficiently served by measures less destructive of First Amendment interests."  *Id*.  The Court said, "[t]he Village's legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation."  *Id*.

Michigan's interest in preventing fraud can be better served by a statute that, instead of directly prohibiting begging, is more narrowly tailored to the specific conduct, such as fraud, that Michigan seeks to prohibit.  Indeed, "'[b]ecause First Amendment freedoms need breathing space to survive,'" a state "'may regulate in the area only with narrow specificity.'"  *Gooding v. Wilson*, 405 U.S. 518, 522 (1972) (quoting *Button*, 371 U.S. at 433).  A state must carefully craft the statute "to punish only unprotected

speech and not be susceptible of application to protected expression." *Gooding ,* 405 U.S. at 522. As the Supreme Court has warned, "statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick*, 413 U.S. at 611–12 (citations omitted). Where, as here, "the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack." *Taxpayers for Vincent*, 466 U.S. at 800 n.19 (citing *Erzonznik v. City of Jacksonville*, 422 U.S. 205, 217 (1975)). Michigan may regulate begging. As the Supreme Court has said, "[s]oliciting financial support is undoubtedly subject to reasonable regulation[.]" *Schaumburg*, 444 U.S. at 632. But Michigan must regulate begging "with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues[.]" *Id.*

Because the anti-begging ordinance violates the First Amendment in banning a substantial amount of activity that the First Amendment protects, we **AFFIRM** the district court's judgment. We need not, and so do not, consider whether the ordinance violates the Fourteenth Amendment.