In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3581

DON NORTON and KAREN OTTERSON,

*Plaintiffs-Appellants*,

*v.*

CITY OF SPRINGFIELD, ILLINOIS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 13-3316 — **Richard Mills**, *Judge*.

ARGUED APRIL 2, 2014 — DECIDED SEPTEMBER 25, 2014

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The City of Springfield has an ordinance (§131.06 of the Municipal Code) that prohibits panhandling in its "downtown historic district"—less than 2% of the City's area but containing its principal shopping, entertainment, and governmental areas, including the Statehouse and many state-government buildings. The ordinance defines panhandling as an oral request for an imme-

diate donation of money. Signs requesting money are allowed; so are oral pleas to send money later. Springfield evidently views signs and requests for deferred donations as less impositional than oral requests for money immediately, which some persons (especially at night or when no one else is nearby) may find threatening. Plaintiffs have received citations for violating this ordinance and allege that they will continue panhandling but fear liability; this gives them standing to contest the ordinance's constitutional validity. See *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014).

Plaintiffs asked the district court to issue a preliminary injunction, contending that the ordinance violates the Constitution's First Amendment, applied to the states by the Fourteenth. The parties simplified the judicial task by agreeing that panhandling is a form of speech, to which the First Amendment applies, and that if it draws lines on the basis of speech's content then it is unconstitutional. Defendants further simplified the litigation by not relying on the principle of *Younger v. Harris*, 401 U.S. 37 (1971), and not contending that the outcome of the citation proceedings blocks this suit through issue preclusion (collateral estoppel) or claim preclusion (res judicata).

We need not decide whether the parties are right about these matters, for none of them affects subject-matter jurisdiction—though some aspects of the parties' agreement reflect the holdings, or assumptions, of *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000), which held that an anti-panhandling ordinance in Indianapolis, Indiana, is constitutional but did not reach (because the parties did not present) the question whether that ordinance is content-based. The district court denied plaintiffs' motion for a preliminary injunction, ruling

that the ordinance as written and enforced generally (that is, "on its face" rather than "as applied" to these plaintiffs) is content-neutral. 2013 U.S. Dist. LEXIS 153330 (C.D. Ill. Oct. 25, 2013).

Other courts of appeals have divided on the question whether rules similar to Springfield's are content-based. Three circuits have answered "yes" and held them invalid. *ACLU v. Las Vegas*, 466 F.3d 784 (9th Cir. 2006); *Clatterbuck v. Charlottesville*, 708 F.3d 549 (4th Cir. 2013); *Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013). But two circuits have concluded that anti-panhandling laws are content-neutral and valid. *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949, 954–55 (D.C. Cir. 1995); *Thayer v. Worcester*, 755 F.3d 60 (1st Cir. 2014) (Souter, J.).

Each of these ordinances or regulations is a little different from the others, and from Springfield's—the ordinance in Worcester, for example, addresses "aggressive" panhandling,[*] and Michigan's statute (the subject of *Speet*) forbids all "begging"—but they all prohibit a request for money or valuables to be handed over immediately. And the distinctions between "money now" and "money later," and between

---

[*] The ordinance covers "a range of potentially coercive though not conventionally aggressive behaviors, including soliciting from someone waiting in line to buy tickets or enter a building; soliciting after dark, calculated as 'the time from one-half hour before sunset to one-half hour after sunrise'; continuing to solicit from a person after the receipt of a negative response; and soliciting anyone within 20 feet of an entrance or parking area of a bank, automated teller machine, public transportation stop, pay phone, theater, or any outdoor commercial seating area like a sidewalk café." 755 F.3d at 64. A second request for money is thus only one definition of "aggressive" panhandling; in all other situations covered by Worcester's ordinance, even one request for money is forbidden.

"money paid to me" and "money paid to someone else," are what plaintiffs say make the ordinances invalid; their lawyer stated at oral argument that, if the ordinances barred *all* requests for money, they would not have a good claim under the First Amendment. In other words, plaintiffs contend that the City's effort to curtail the ordinance's scope, by permitting requests that do not seem threatening, is what makes it unconstitutional. The rule that regulation of speech must be narrowly tailored, see, e.g., *McCullen v. Coakley*, 134 S. Ct. 2518 (2014), thus becomes an engine of destruction, because every effort to narrow a rule will distinguish some speech from other speech and so, in plaintiffs' view, doom it.

The Supreme Court has dealt with three anti-panhandling laws or regulations. *Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), holds that a state fair may prohibit panhandling and other fundraising by anyone walking its grounds, limiting solicitation to rented booths. *United States v. Kokinda*, 497 U.S. 720 (1990), holds that the Postal Service may forbid all fundraising on a sidewalk leading to a post office. *International Society for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992), holds that an airport authority may prohibit all solicitation and receipt of funds within the terminal. Plaintiffs maintain that these decisions are irrelevant, because each rests in part on a conclusion that the venue was not a traditional public forum.

True enough, in the Supreme Court's three decisions the government had the benefit of its proprietary interest in the forum, while public streets traditionally are open to speech. But in each case the Court observed that regulation still must be reasonable. See also *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 807–13 (1985). In each case,

the Court concluded that the regulation *was* reasonable. For example, in *Lee* the Court observed: "face-to-face solicitation presents risks of duress that are an appropriate target of regulation. The skillful, and unprincipled, solicitor can target the most vulnerable, including those accompanying children or those suffering physical impairment and who cannot easily avoid the solicitation." 505 U.S. at 684.

In both *Kokinda* and *Lee*, Justice Kennedy wrote separately to express the view that the regulation was an appropriate time, place, and manner limitation, independent of the venue's "forum" status. *Kokinda*, 497 U.S. at 737–39; *Lee*, 505 U.S. at 703–09. Justice Kennedy supplied the fifth vote necessary to the disposition in *Kokinda*. And although Justice Kennedy's vote was not essential to the disposition in *Lee*, Justice Souter, writing for the First Circuit in *Thayer*, concluded that Justice Kennedy's analysis illustrates the Court's likely disposition of a panhandling regulation in a traditional public forum. Justice Souter dissented in *Lee*; he disagreed with Justice Kennedy on the merits (in *Lee*) but still concluded (in *Thayer*) that Justice Kennedy's view is likely to carry the day.

Justice Kennedy concluded in *Lee* that an airport should be treated the same as a city street and that restricting panhandling is permissible in both settings. What made the regulation permissible, he concluded, was that it had been narrowly tailored so that it dealt only with potentially threatening (or advantage-taking) confrontations. He explained (505 U.S. at 707, citation omitted): "we have held that to be narrowly tailored a regulation need not be the least restrictive or least intrusive means of achieving an end. The regulation must be reasonable, and must not burden substantially more speech than necessary. Under this standard the solicitation

ban survives with ease, because it prohibits only solicitation of money for immediate receipt." In other words, what *saved* the regulation in Justice Kennedy's eyes is exactly what *condemns* it in plaintiffs': the limit to solicitation for immediate receipt, which Justice Kennedy saw as the soul of reasonableness and plaintiffs as pernicious content discrimination.

When the Supreme Court writes that rules regulating speech by content require the same sort of powerful justification as rules regulating speech by viewpoint, a standard met in practice only by a need as serious as the battle against terrorists, see *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), it does not mean that all classification of speech is (effectively) forbidden. Government regularly distinguishes speech by subject-matter, and the Court does not express special concern.

> "[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities, *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir. 1968), corporate proxy statements, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), the exchange of price and production information among competitors, *American Column & Lumber Co. v. United States*, 257 U.S. 377 (1921), and employers' threats of retaliation for the labor activities of employees, *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969). … Each of these examples illustrates that the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity. Neither [*Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)] nor [*Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)] pur-

> ported to cast doubt on the permissibility of these kinds of commercial regulation.

*Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 456 (1978). This means that the "content-based" restrictions that require special justification are a subset of those that depend on the subject-matter of the speech.

The Court has classified two kinds of regulations as content-based. One is regulation that restricts speech because of the ideas it conveys. See, e.g., *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 643 (1994). The other is regulation that restricts speech because the government disapproves of its message. See, e.g., *Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729 (2011); *United States v. Stevens*, 559 U.S. 460 (2010); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Humanitarian Law Project*, 561 U.S. at 27–28. See also Elena Kagan, *Private Speech, Public Purpose: The Role of Governmental Motive in First Amendment Doctrine*, 63 U. Chi. L. Rev. 413, 443–56 (1996); Geoffrey R. Stone, *Content-Neutral Restrictions*, 54 U. Chi. L. Rev. 46, 54–57 (1987); Geoffrey R. Stone, *Content Regulation and the First Amendment*, 25 Wm. & Mary L. Rev. 189, 233–51 (1983). It is hard to see an anti-panhandling ordinance as entailing either kind of discrimination. "Give me money right now" does not express an idea or message about politics, the arts, or any other topic on which the government may seek to throttle expression in order to protect itself or a favored set of speakers. Springfield's ordinance does not regulate speech by the pitch used; it does not say, for example, that "give me money because I'm homeless" or "give me money because I support the governor" is permissible, while "give me money because my daughter is sick" or "give me money because the distribution of income is inequitable" is forbidden.

The ordinance is indifferent to the solicitor's stated reason for seeking money, or whether the requester states any reason at all. And if the panhandler uses a sign, which is less threatening than oral demands (the requester need not approach the target), there is no restriction. Springfield has not meddled with the marketplace of ideas. Here, as in *McCullen v. Coakley*, 134 S. Ct. at 2530–32, what activates the prohibition is *where* a person says something (in the "downtown historic district") rather than what position a person takes on a political or literary question. Petitioners are free to ask for money anywhere in Springfield outside the "downtown historic district". The Court added in *McCullen* that selective exemptions from an otherwise-neutral rule do not make that rule content-based. It follows that Springfield's exemption for signs does not make its ordinance content-based, and plaintiffs do not argue otherwise.

The disagreement within the Court in *McCullen* about how to distinguish a content-based from a content-neutral law (four Justices thought that law to have been content-based)—and the conflict among the circuits about panhandling ordinances—shows that it is difficult to be confident about how the line between subject-matter (usually allowed) and content-based (usually forbidden) distinctions is drawn. We do not profess certainty about our conclusion that the ordinance is content-neutral. But this was Justice Kennedy's understanding in *Lee*. Evaluated by the standard for time, place, and manner restrictions Springfield's ordinance is within the power of state and local government.

AFFIRMED

MANION, *Circuit Judge,* dissenting.

Today the court holds that a panhandler who asks a passerby for money in the downtown historic district of the City of Springfield commits a crime and may face criminal prosecution for this simple request. This conclusion is alien to our First Amendment jurisprudence. Accordingly, I do not join the opinion of the court because the City of Springfield's panhandling ordinance is a content-based regulation of speech, subject to strict scrutiny. By concluding that the ordinance is content-neutral, the court misapplies the Supreme Court's content-based regulation jurisprudence. Consequently, I respectfully dissent.

Section 131.06(e) of the City of Springfield Municipal Code bans panhandling in the City of Springfield's (the "City") "downtown historic district." The ordinance defines panhandling, in pertinent part, as "[a]ny solicitation made in person … in which a person requests an immediate donation of money or other gratuity." § 131.06(a)(1).[1] But the ordinance explicitly exempts from the definition of panhandling the passive display of a sign that invites donations without making a "vocal request." § 131.06(b).

The Supreme Court has upheld solicitation bans three times, i.e., *Int'l Soc. for Krishna Consciousness v. Lee*, 505 U.S. 672 (1992); *United States v. Kokinda*, 497 U.S. 720 (1990) (plurality); and *Heffron v. Int'l Soc. for Krishna Consciousness,* 452 U.S. 640 (1981). But the governmental regulation implicated in those decisions applied to all forms of solicitation. *See Lee,* 505 U.S. at 676; *Kokinda,* 497 U.S. at 724; *Heffron*, 452 U.S. at 643–44. In our case, however, the City's ordinance does not ban all solicita-

---

[1] The ordinance does not define "gratuity."

tion, but, as discussed in more detail below, distinguishes among various types of solicitation.

Likewise, we upheld a solicitation ban in *Gresham v. Peterson,* 225 F.3d 899 (7th Cir. 2000). But *Gresham* was presented to us in a materially different posture, where the parties agreed that the regulations were content-neutral, and so we did not decide whether the Indianapolis ordinance could be justified without reference to the content of the regulated speech. *Id.* at 906. So we must now answer the question that has remained unanswered after the Supreme Court's decisions and *Gresham*—specifically, whether such an ordinance is content-based or content-neutral.

The court asserts a division among five Circuits regarding whether anti-panhandling ordinances like the one before us are content-based or content-neutral. It states that the Fourth, Sixth, and Ninth Circuits have struck down anti-panhandling ordinances as content-based, while the First Circuit and District of Columbia Circuits have upheld anti-panhandling ordinances as content-neutral. Faced with what it understands to be a fork in the road, the court takes the path less-traveled, and joins the First and District of Columbia Circuits. I agree with the court's assertion that three Circuits have struck down anti-panhandling ordinances as content-based, but I disagree with the court's conclusion that the First Circuit's decision conflicts with them. A careful look at each of the five cases is therefore necessary.

## A.  All three Circuits to address similar regulations of speech have concluded that they are content-based.

Three Circuit decisions have held that statutory prohibitions against immediate requests for monetary donations are content-based. In *Am. Civil Liberties Union of Nev. v. City of Las*

*Vegas,* 466 F.3d 784 (9th Cir. 2006) ("*ACLU*"), the Ninth Circuit struck down an ordinance that prohibited panhandling on a five-block stretch of public sidewalks after holding that it was a content-based restriction in violation of the First Amendment, and observed that "[a]lthough courts have held that bans on the *act of solicitation* are content-neutral, we have not found any case holding that a regulation that separates out *words of solicitation* for different treatment is content-neutral." *Id.* at 794 (emphasis in original).

Likewise, in *Speet v. Schuette,* 726 F.3d 867 (6th Cir. 2013), the Sixth Circuit struck down a Michigan statute that criminalized begging in a public place. *Id.* at 870. There, the court held that "Michigan's anti-begging statute cannot withstand facial attack because it prohibits a substantial amount of solicitation, an activity that the First Amendment protects, but allows other solicitation based on content." *Id.*

Finally, in a case very similar to the one before us, in *Clatterbuck v. City of Charlottesville,* 708 F.3d 549 (4th Cir. 2013), the Fourth Circuit confronted a challenge to a city ordinance that made it "unlawful for any person to solicit money or other things of value or to solicit the sale of goods or services on the Downtown Mall within fifty (50) feet (in any direction) or 2nd Street West and 4th Street East, when those streets are open to vehicular traffic." *Id.* at 552. Like our case, "'solicit' mean[t] to request an immediate donation of money or other thing of value from another person, regardless of the solicitor's purpose or intended use of the money or other thing of value." *Id.* In *Clatterbuck,* the district court concluded that the ordinance was content-neutral because it "d[id] not distinguish between

favored and disfavored solicitation," but rather "applie[d] to all forms of solicitations, regardless of the solicitor's purpose or the content of the solicitor's speech." *Id.* at 556. The Fourth Circuit held that the district court's conclusion was incorrect and reversed. *Id.* The court stated:

> The Ordinance plainly distinguishes between types of solicitations on its face. Whether the Ordinance is violated turns solely on the nature or content of the solicitor's speech: it prohibits solicitations that request immediate donations of things of value, while allowing other types of solicitations, such as those that request future donations, or those that request things which may have no "value"—a signature or kind word, perhaps.

*Id.* In fact, the rationale adopted by the district court in *Clatterbuck* is precisely the argument that the district court adopted in this case—that the ordinance was content-neutral because it "d[id] not distinguish between favored and disfavored solicitation," but rather "applie[d] to all forms of solicitations, regardless of the solicitor's purpose or the content of the solicitor's speech." But, the Fourth Circuit expressly rejected the argument when it held that the ordinance was content-based because it did not distinguish between favored and disfavored content of the solicitor's speech. *Id.* Like *Clatterbuck*, here the City's ordinance permits some verbal requests for money, but it specifically prohibits a verbal request for money for a panhandler's personal use.

**B. The First Circuit's decision is not in conflict with the Fourth, Sixth, and Ninth Circuits, but does conflict with the District of Columbia Circuit.**

The First Circuit's decision does not conflict with the three Circuits that have held that anti-panhandling ordinances are a content-based regulation of speech. In *Thayer v. City of Worcester*, 755 F.3d 60 (1st Cir. 2014), the First Circuit addressed an ordinance that made it "unlawful for any person to beg, panhandle or solicit any other person in an aggressive manner." *Worcester Revised Ordinances,* ch. 9, § 16(d). The ordinance defined "begging" or "panhandling" as "asking for money or objects of value, with the intention that the money or object be transferred at that time, and at that place." *Id.* at §16(c). Additionally, the ordinance defined "solicit[ation]" as "using the spoken, written, or printed word, bodily gestures, signs, or other means of communication with the purpose of obtaining an immediate donation of money or other thing of value the same as begging or panhandling and also include the offer to immediately exchange and/or sell any goods or services." *Id.* The First Circuit concluded that the ordinance was content-neutral. *Thayer*, 755 F.3d at 71.

The ordinance in *Thayer* was designed to combat the ill effects of "aggressive" solicitation and prohibits "continuing to solicit from a person *after the person has given a negative response to such solicitation*," or soliciting someone "in a manner … likely to cause a reasonable person to fear immediate bodily harm." *Worcester Revised Ordinances*, ch. 9, §§ 16(c) (emphasis

added), 16(a)(3)(H).[2]  Importantly, the plain text of the ordinance allows at least one verbal solicitation for money, and prohibits only aggressive follow-up after a negative response.[3] Because the ordinance in *Thayer* allows at least one verbal solicitation for money, what is criminal in the City of Springfield is legal in the First Circuit. Thus, *Thayer* does not compound the District of Columbia Circuit's split with the three Circuit court cases I have discussed—rather it is entirely consistent with all of them.[4]

## C. The District of Columbia Circuit's decision should not be followed.

Finally, I address the District of Columbia Circuit's decision in *ISKCON of Potomac, Inc. v. Kennedy*, 61 F.3d 949 (D.C. Cir. 1995), the only Circuit court decision of the five discussed that does not involve a panhandler. In *ISKCON*, the court considered an "as-applied" challenge to a regulation that prohibited "[s]oliciting or demanding gifts, money, goods or services [in

---

[2]  In our case, the plaintiffs brought no challenge to the part of the City's ordinance prohibiting aggressive solicitation.

[3]  "Aggressive" describes the manner of conduct—it obviously does not refer to "content."

[4]  Moreover, *Thayer* did not address whether the statute was facially content-based but skipped over that prong entirely and considered only "'whether the government … adopted [the] regulation of speech because of disagreement with the message it conveys,'" and ultimately upheld the ordinance. 755 F.3d at 67 (quoting *Ward*, 491 U.S. at 791). So *Thayer* simply did not address the question before us in the present appeal. It also neglected to discuss the Fourth, Sixth, or Ninth Circuits' decisions.

the National Capital Region parks]." *Id.* at 954. Although the regulation applied broadly, the court accepted the Park Service's interpretation of "solicitation" to mean "only an in-person request for immediate payment." *Id.* at 954–55. The court rejected the plaintiffs' argument that the regulation was content-based. *Id.* The court held that a prohibition on "in-person solicitation for immediate payment regulates the manner but not the content of expression." *Id.* (citing *Lee*, 505 U.S. at 704–07 (Kennedy, J., concurring)).

The reasoning of *ISKCON* is unsound. The first step in First Amendment public forum analysis is to examine the regulation to determine whether it discriminates on the basis of content, viewpoint, or not at all. If a court concludes the regulation is content-neutral, then it asks "whether the requirements are 'narrowly tailored to serve a significant governmental interest, and … leave open ample alternative channels for communication of the [regulated] information.'" *ISKCON*, 61 F.3d at 954 (citations omitted). But *ISKCON* skipped the first step, and started with the second. It interpreted the regulation, as-applied, and held that it was content-neutral because the plaintiffs could make their request for donations using leaflets with donation instructions. *Id.* at 956. In other words, the court determined that *because* the regulation left open ample alternative channels for communication, it was content-neutral. *Id.* It then applied the remaining parts of the second half of the analysis to strike down the regulation. *Id.* This approach put the cart before the horse. Ultimately, the court recognized that the Service's interest was significant, but it nevertheless struck down the regulation because it was not narrowly-tailored. *Id.* In short, *ISKCON* should not be relied upon

because it assumed what was at issue—that is, that the regulation was content-neutral.

Rather than compounding the Circuit split, a look at the Supreme Court's latest First Amendment case reminds us that a regulation is content-based if it draws "content-based distinctions on its face." *McCullen v. Coakley*, 134 S. Ct. 2518, 2531 (2014). A regulation does so "if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *Id.* (quoting *F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 383 (1984)). That is, does a violation of the regulation turn on "what [the defendants] say[?]" *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010)).

To answer the question implicitly posed by these First Amendment cases, we must temporarily step into the shoes of the City's enforcement authorities. A police officer seeking to enforce the City's ordinance must listen to what the speaker is saying in order to determine whether the speaker has violated the ordinance. Indeed, the officer must determine on which side of at least three different verbal distinctions the speech falls when evaluating whether the ordinance has been violated. First, the officer must determine whether the speech is a request for money or other gratuity (potentially a violation) or merely a request for the listener's time, signature, or labor (not a violation). Second, the officer must determine whether the speech is a request for an immediate transfer of money (potentially a violation) or merely a request for the transfer of money at a future date (not a violation). Third, the officer must determine whether the speech is a request for a charitable donation (potentially a violation) or

merely a request for a commercial transaction (not a violation). The officer cannot answer any of these questions without listening to and understanding what the speaker is saying. That is precisely the sort of situation that the Supreme Court said involves a content-based regulation. *See Snyder*, 131 S. Ct. at 1219 (noting that a regulation would be content-based if speakers "standing at the very spot where [the plaintiffs] stood," but making slightly different vocal requests "would not [be] subjected to liability"); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) (holding that, because the determination of "whether any particular newsrack [fell] within the ban [was] determined by the content of the publication resting inside that newsrack[,]" the regulation was content-based); *see also Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010) (holding that a law "regulates speech on the basis of content" if determining whether individuals have violated the law "depends on what they say"). That the officer must listen to and understand the speech to determine if the ordinance has been violated means that the ordinance is content-based, unlike those laws which can be imposed based merely on the volume, location, or conduct accompanying the speech.

The court says that it does not necessarily matter that the ordinance targets speakers based on what they say, so long as the ordinance does not "restrict[] speech because of the ideas it conveys" or because it "disapproves of its message." Op. at 7; *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). On this logic, the court concludes that the statement "'[g]ive me money right now' does not express an idea or message about politics, the arts, or any other topic on which the government may seek to throttle expression in order to protect itself or a favored set

of speakers." Op. at 7. However, our earlier decision in *Gresham* disputes this conclusion. *Gresham,* 225 F.3d at 904 ("Beggars at times may communicate important political or social messages in their appeals for money, explaining their conditions related to veteran status, homelessness, unemployment and disability, to name a few. Like the organized charities, their messages cannot always be easily separated from their need for money"). In any event, the court concludes that if an ordinance is not viewpoint-based, then it must be content-neutral. *Id.* By this logic, a content-based challenge to an ordinance that is not viewpoint-based "loses by default." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch.,* 743 F.3d 569, 583–84 (7th Cir. 2014) (Manion, J., concurring in part and dissenting in part). I disagree. In its attempt to determine whether the ordinance is content-based, the court examines whether the ordinance strips a viewpoint from the marketplace of ideas. That is not the test for determining whether an ordinance is a content-based regulation of speech.

Even if *Ward* and its progeny implicitly suggest some legal distinction between permissible restrictions on *what a speaker says* and the *speaker's message*, the City's ordinance is still content-based because it advantages commercial speech over charitable speech. The City's ordinance facially prohibits someone from vocally communicating the message, "I want money," while allowing an identically situated speaker to communicate the message "I want money, and I will give you something of value in return." Thus, the City's ordinance leaves commercial speech comparatively unregulated, but prohibits a type of vocal speech that has traditionally enjoyed greater constitutional protections—that is, speech soliciting charitable activity. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 789 (1988) ("[T]he solicitation of

charitable contributions is protected speech"). Although the court observes that commercial speech is often subjected to content-based restrictions, Op. at 6, it fails to address the content-based distinction the ordinance draws between commercial speech and charitable speech. However, the two Circuits that have previously considered similar regulations that distinguish between commercial speech and charitable speech both concluded that they were content-based. *See Speet*, 726 F.3d at 875; *ACLU,* 466 F.3d at 794.[5]

Because the City's ordinance is content-based, we may only uphold the ordinance if it satisfies strict-scrutiny review. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000); *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 646 (7th Cir. 2006). "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *Playboy,* 529 U.S. at 816. But here the City offers no argument that the ordinance can satisfy that hefty burden. *Cf. Horina v. Granite City*, 538 F.3d 624, 633–34 (7th Cir. 2008) (failure to assert a government interest necessarily fails to prove a government interest). And indeed, the City all but concedes that it cannot satisfy this demanding standard. *See* City Br. 3 n.1.

---

[5] The First, Fourth, and District of Columbia Circuits' decisions involved laws that prohibited both in-person solicitations for charitable donations and in-person solicitations for commercial transactions. *See Worcester Revised Ordinances*, ch. 9, § 16 (defining "solicit" and "solicitation" to include both requests for immediate donations and requests for immediate commercial transactions); *Clatterbuck,* 708 F.3d at 552; *ISKCON,* 61 F.3d at 953–54 (noting that the park regulation prohibited both solicitation for charitable contributions and commercial sales).

The City's ordinance prohibiting vocal requests for immediate donations of money or other gratuity at all times throughout the downtown historic district is a content-based regulation. Because the City has not alleged that the ordinance's method of restricting speech is the least restrictive means to further a compelling government interest, the City has failed to demonstrate that the ordinance satisfies strict scrutiny. *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115, 126 (1989) ("The Government may … regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest").

For the foregoing reasons, I would reverse the district court's order denying the plaintiffs' motion for a preliminary injunction and remand with instructions to enter a preliminary injunction enjoining the enforcement of City ordinance §131.06(a)(1). Accordingly, I respectfully dissent.